UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JAMES ANTHONY LYONS** | **CIVIL ACTION NO. 22-1334** |
| | |
| **VS.** | **SECTION P** |
| | |
| | **JUDGE TERRY A. DOUGHTY** |
| | |
| **RIVER BEND DETENTION CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff James Anthony Lyons, a prisoner at Calcasieu Correctional Center proceeding pro se and in forma pauperis, filed this proceeding on approximately May 18, 2022, under 42 U.S.C. § 1983. He names the following defendants: Riverbend Detention Center, Correctional Officer Taylor,[1] Correctional Officer Rentals,[2] Captain Frost, and Calcasieu Correctional Center.[3]

For reasons that follow, the Court should retain Plaintiff James Anthony Lyons's (1) excessive force claim against Correctional Officer Taylor and (2) claims of constitutionally inadequate medical care against Correctional Officer Taylor and Correctional Officer Rentals. The Court should dismiss Plaintiff's remaining claims, including his request for habeas corpus relief.

---

[1] Plaintiff also refers to Correctional Officer Taylor as Sergeant Taylor.

[2] Plaintiff also refers to Correctional Officer Rentals as Lieutenant Rentals.

[3] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

## Background

Plaintiff alleges in his initial pleading that on March 25, 2022, at Riverbend Detention Center, Correctional Officer Taylor sprayed him with mace[4] "for looking at him." [doc. # 1, p. 1].

Plaintiff explains in his first amended pleading that on March 25, 2022, when he was walking in a single-file line to "pill call[,]" the inmate in front of him suddenly stopped, jumped out of line, and "made a hand gesture that startled" him. [doc. # 5-1, p. 1]. Plaintiff asked the other inmate to stay away from him, and the other inmate agreed. *Id.* Captain Frost, however, heard the exchange and told Officer Rentals to assign Plaintiff and the other inmate to separate dormitories. *Id.* Frost ordered Rentals to move Plaintiff from "C-Dorm" to "B-Dorm." *Id.*

Plaintiff returned to "C-Dorm to pack up [his] property[,]" but when he arrived Rentals and a trustee had "what appeared to be [Plaintiff's] property in a cart." *Id.* at 1-2. Plaintiff "began to look through the cart to make sure they had all [his] property in there, but Lieutenant Rentals said, 'take his ass to B-Dorm we don't have time for this shit . . . .'" *Id.* at 2.

Plaintiff was searching for a bunk with Sergeant Meadows in B-Dorm when Rentals entered, "stated f**k that nigga stop being friendly with him[,]" and instructed Sergeant Meadows to choose a bunk for Plaintiff. *Id.* Plaintiff chose the nearest bunk, and Meadows and Rentals exited. *Id.* Plaintiff then realized that he was missing some property he had in C-Dorm, including clothing, a laundry sack, "some legal paperwork[,]" and his I.D. *Id.* He asked Meadows and Taylor if they could retrieve his property. *Id.* Thirty minutes passed, and Plaintiff did not receive a reply; a female guard instructed him to ask Meadows about his property again. *Id.* Plaintiff asked Meadows and Taylor "several times in a 2 1/2 hour span with no reply. [sic]."

---

[4] Plaintiff appears to use "mace" and "pepper spray" interchangeably.

2

*Id.* The last time he asked Rentals about his property, Rentals stated, "search his ass before I knock his ass out." *Id.* Plaintiff responded that he "just want[ed]" to retrieve his property before someone stole it. *Id.*

Rentals and Taylor escorted Plaintiff to the laundry room, where they threatened and insulted him before asking him to remove his clothing and bend over. [doc. #s 5, p. 3; 5-1, p. 2]. "The request made [Plaintiff] feel violated since the normal procedure was to squat and cough . . . ." [doc. # 5-1, pp. 2-3]. Plaintiff complied, however, because the officers had a can of pepper spray and cornered him. *Id.* After Plaintiff squatted and coughed, Taylor noticed that Plaintiff was looking at him as Plaintiff donned his clothing. *Id.* at 3. Taylor told Plaintiff that he would spray him with mace if he looked at him again. *Id.* Plaintiff states that "there was nowhere to look." *Id.* Taylor then sprayed him with pepper spray "for looking at him or in his direction while [Plaintiff] was getting dressed." *Id.* The spray burned Plaintiff's eyes and caused him to hyperventilate and experience shortness of breath. [doc. # 10, p. 1]. The spray also contacted his genitals, causing them to burn. *Id.* Plaintiff maintains that he was not a threat to anyone and that he did not make any threatening moves or statements. [doc. # 5-1, p. 3].

Plaintiff claims that Rentals "assisted" Taylor. [doc. #s 5, p. 3; 10, p. 1].

Plaintiff claims that Taylor and Rentals then placed him in segregation for six days. [doc. # 5-1, p. 3]. They did not issue him a "write up[,]" provide a reason for spraying him or placing him in segregation, or provide the medical attention he requested. [doc. #s 5, p. 3; 5-1, p. 3].

Plaintiff continued experiencing the effects of the spray for three to six days while in segregation. [doc. # 10, pp. 1, 3]. He had respiratory problems and "issues with [his] private parts burning." *Id.* at 3. He asked for a nurse, but "there wasn't one there." *Id.* He submitted a "sick call slip[,]" but it was never answered. *Id.* He was unable to "see the nurse the whole 6

days [he] was in segregation . . . ." *Id.* He states that after his six-day period of segregation, "the genital burning had gone away . . . ." *Id.* He faults Officers Taylor and Rentals. *Id.*

Plaintiff states that his "property was never found . . . ." [doc. # 5, p. 3]. He claims that Officer Rentals "allowed [his] property to get stolen . . . ." [doc. # 10, p. 1].

Plaintiff claims that Captain Frost never answered his grievance. [doc. # 10, p. 1].

Plaintiff seeks release from confinement and monetary compensation for his mental, physical, emotional, and future damages. [doc. # 5, p. 4].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[5] *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the

---

[5] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

4

unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A.*

*(Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Entities Unamenable to Suit**

Plaintiff names Riverbend Detention Center and Calcasieu Correctional Center as defendants.

Federal Rule of Civil Procedure 17(b)(3) provides that the "[c]apacity to sue or be sued is determined . . . by the law of the state where the court is located . . . ." Under Louisiana law, an entity must qualify as a "juridical person," which is "an entity to which the law attributes personality, such as a corporation or partnership." LA. CIV. CODE art. 24.

The entities above do not qualify as juridical persons; accordingly, the Court should dismiss Plaintiff's claims against them.

**3. Habeas Corpus**

Plaintiff seeks release from incarceration. [doc. # 5, p. 4]. Although Plaintiff filed this action under 42 U.S.C. § 1983, he challenges the very fact and duration of his physical

imprisonment. Plaintiff should, *after he exhausts his state court remedies*, pursue his request for immediate release from custody through a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See Preiser v. Rodriguez*, 411 U.S. 475, 93 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."); *Stringer v. Williams*, 161 F.3d 259, 262 (5th Cir. 1998) (construing a request for release from pending state criminal proceedings as a habeas petition under Section 2241). Accordingly, the Court should deny Plaintiff's request for release.

The undersigned again cautions that Plaintiff must first exhaust his available state court remedies before seeking habeas relief in this Court. *See Preiser*, 411 U.S. at 477 (observing that if "habeas corpus is the exclusive federal remedy . . . a plaintiff cannot seek the intervention of a federal court until he has first sought and been denied relief in the state courts, if a state remedy is available and adequate.").[6] Plaintiff is further cautioned that the Court may abstain under *Younger v. Harris*, 401 U.S. 37 (1971), or *Dickerson*, 816 F.2d at 225, if Plaintiff asks the Court to interfere with his ongoing criminal prosecution.[7] *See Gibson v. Orleans Par. Sheriff*, 2014

---

[6] *See also Dickerson v. State of La.*, 816 F.2d 220, 225 (5th Cir. 1987) ("Despite the absence of an exhaustion requirement in the statutory language of section 2241(c)(3), a body of case law has developed holding that although section 2241 establishes jurisdiction in the federal courts to consider pre-trial habeas corpus petitions, federal courts should abstain from the exercise of that jurisdiction if the issues raised in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner.").

[7] "Under the *Younger* abstention doctrine, federal courts should generally decline to exercise jurisdiction when: (1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) (internal quotation marks and quoted sources omitted). Under *Dickerson*, "federal courts should abstain . . . if the issues raised

WL 1066987, at *1 (5th Cir. Mar. 20, 2014) (affirming abstention under *Younger v. Harris*, where a petitioner sought habeas corpus relief under 28 U.S.C. § 2241).

**4. Lost or Stolen Property**

Plaintiff claims that Officer Rentals "allowed [his] property to get stolen . . . ." [doc. # 10, p. 1]. When Plaintiff moved to B-Dorm, he realized that he was missing property he had in C-Dorm, including clothing, a laundry sack, "some legal paperwork[,]" and his I.D. [doc. # 5-1, p. 2]. When he asked Rentals about his property, Rentals stated, "search his ass before I knock his ass out." *Id.* Plaintiff responded that he "just want[ed]" to retrieve his property before someone stole it. *Id.* Plaintiff's "property was never found . . . ." [doc. # 5, p. 3].

A post-deprivation tort cause of action in state law is, under the *Parratt/Hudson*[8] doctrine, sufficient to satisfy the requirements of due process when a plaintiff alleges that he has been deprived of his property, without due process of law, by the negligent or intentional actions of a state officer that are "random and unauthorized."[9] *Sheppard v. Louisiana Bd. of Parole*, 873 F.2d 761, 763 (5th Cir. 1989) (*quoting Hudson*, 468 U.S. at 533-35). Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984) (*citing* Louisiana Civil Code Article 2315 and observing that "Louisiana law affords an opportunity to redress intentional torts under the same section of the Code by which

---

in the petition may be resolved either by trial on the merits in the state court or by other state procedures available to the petitioner." *Dickerson*, 816 F.2d at 225.

[8] *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327 (1986).

[9] "The doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized)." *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996).

negligence is remedied."); *Fuller v. XTO Energy, Inc.*, 989 So. 2d 298, 302 (La. Ct. App. 2008) (recognizing the tort of conversion).[10]

Here, Plaintiff does not allege that he was deprived of his property by anyone acting under an official policy, custom, or procedure; rather, he describes random and unauthorized action. *See Hernandez v. Cooper*, 2021 WL 5444742, at *1 (5th Cir. Nov. 19, 2021) (holding, where the plaintiff alleged that his property was stolen because an officer violated procedure for packing inmate property, that *Parratt-Hudson* prevented the plaintiff "from pursuing a confiscation-of-property claim using § 1983.").[11] Accordingly, the Court should dismiss Plaintiff's procedural due process claim.[12]

---

[10] *See also Seay v. Hutto*, 483 F. App'x 900, 902 (5th Cir. 2012) ("But [the plaintiff] does not allege that prison officials were delegated authority under state law, regulation, or policy to direct that a prisoner's property be stolen by other inmates. He therefore has not alleged that his property was taken pursuant to an official policy that would render the *Parratt/Hudson* doctrine inapplicable."); *Suria v. Wathen*, 616 F. App'x 175 (5th Cir. 2015) (affirming dismissal of a claim that correctional officers lost an inmate's personal property through gross negligence and dereliction of duty, on grounds that "negligent conduct is not actionable under § 1983."); *Krause v. Leonard*, 352 F. App'x 933 (5th Cir. 2009) (prisoner's claim that police lost property that was inside his impounded automobile and allowed thieves to steal from his trailers during his time in jail was not cognizable under Section 1983 because state law provided a meaningful post-deprivation remedy).

[11] *See also Butler v. Anderson*, 2021 WL 4520312, at *1 (5th Cir. Oct. 1, 2021) ("Butler alleged that his property was lost because Anderson failed to follow the prison policy to store, tag, and safeguard it as required when he left the Ferguson Unit. The allegations concerning the prison official's actions are exactly the type of random and unauthorized conduct to which the *Parratt/Hudson* doctrine was designed to apply."); *Meeks v. Nash*, 2021 WL 4515396, at *1 (5th Cir. Oct. 1, 2021).

[12] To the extent Plaintiff alleges that by losing his legal paperwork, Officer Rentals violated his right of access to the courts, Plaintiff does not state a plausible claim because he does not allege that he suffered a cognizable injury. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Walker v. Navarro Cty. Jail*, 4 F.3d 410, 413 (5th Cir. 1993) ("[F]or Walker's claim to rise to the level of a constitutional violation of his right to access to the courts, he must allege that his position as a litigant was prejudiced by the mail tampering.").

If Plaintiff claims that Rentals was negligent, he does not state a plausible state law negligence claim. He alleges only that his "property was never found[,]" and that Rentals "allowed [his] property to get stolen . . . ." This ostensible claim is conclusory because Plaintiff does not identify a negligent act. *See Gressett v. New Orleans City*, 779 F. App'x 260, 261 (5th Cir. 2019) ("Gressett's negligence pleadings also fail to state a claim because his complaint only contains oblique references to the police department's and the officer's negligence without outlining the elements for such a claim under Louisiana law. In particular, Gressett's petition does not assert that the officer and the Department failed 'to conform [their] conduct to a specific standard.'"). *Duncan v. Wal-Mart La., L.L.C.*, 863 F.3d 406, 409 (5th Cir. 2017) (explaining that a plaintiff must show that the defendant must conform to a "specific standard" to properly plead a negligence claim). The Court should dismiss this ostensible negligence claim.

### 5. Threats and Insults

Plaintiff claims that Defendants Rentals and Taylor threatened and insulted him.

Verbal threats, without more, do not support a claimed constitutional violation. *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Allegations of mere verbal abuse by prison guards simply do not give rise to a cause of action under Section 1983. *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *Siglar*, 112 F.3d at 191. "[M]ere allegations of verbal abuse or epithets, reprehensible though they may be, do not amount to a cognizable constitutional violation under Section 1983." *Matthews v. LeBlanc*, 2022 WL 2951759, at *1 (5th Cir. July 26, 2022).

Plaintiff does not state a claim of constitutional dimension. The Court should dismiss these claims.

10

**6. Responding to Grievances**

Plaintiff claims that Captain Frost never answered his grievance. [doc. # 10, p. 1].

A prisoner does "not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices . . . ." *Burgess v. Reddix*, 609 F. App'x 211 (5th Cir. 2015); *see Alexander v. Texas Dep't of Criminal Justice*, 2020 WL 826452, at *2 (5th Cir. Feb. 20, 2020) (affirming dismissal of a claim that grievances were mishandled or improperly denied because "prisoners have no due process rights in the inmate grievance process.").

In *Sandin v. Conner*, 515 U.S. 472, 475 (1995), the Supreme Court left prisoners without a federally-protected right to have grievances investigated and resolved. *See Taylor v. Cockrell*, 92 Fed. App'x. 77, 78 (5th Cir. 2004) (holding that "claims that the defendants violated his constitutional rights by failing to investigate his grievances fall short of establishing a federal constitutional claim."); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) ("[The plaintiff] does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction. . . . [A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless."). Here, accordingly, the Court should dismiss Plaintiff's claim.

**7. Limitation on Recovery Under 42 U.S.C. § 1997e(e)**

Plaintiff's only remaining request for relief is monetary compensation (above, the undersigned recommended dismissing Plaintiff's request for habeas corpus relief).

Under 42 U.S.C. § 1997e(e), "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as

11

defined in section 2246 of Title 18)." "[I]t is the nature of the relief sought, and not the underlying substantive violation, that controls: Section 1997e(e) applies to all federal civil actions in which a prisoner alleges a constitutional violation, making compensatory damages for mental or emotional injuries non-recoverable, absent physical injury." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005). "The 'physical injury' required by § 1997e(e) 'must be more than de minimus [sic], but need not be significant.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (*quoting Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)).

Here, Plaintiff claims: (1) Captain Frost ordered Rentals to move Plaintiff from "C-Dorm" to "B-Dorm" after Frost heard Plaintiff's verbal exchange with another prisoner; (2) Taylor and Rentals placed him in segregation for six days without issuing a "write up" or providing a reason; and (3) Rentals and Taylor instructed Plaintiff to remove his clothing and bend over.

Plaintiff "brought" this action when he was incarcerated. [doc. # 1-2]. As to the claims above, he does not allege that he suffered any physical injury—or any other compensable injury or damage—*because* of the alleged actions or failures. Moreover, he does not allege that he was a victim of a "sexual act" as defined in 18 U.S.C. § 2246.

To the extent Plaintiff alleges that defendants caused him mental, emotional, or de-minimis physical injuries, he may not recover monetary relief. Because Plaintiff does not seek any other cognizable relief for the claims above, the Court should dismiss the claims.

## 8. Medical Care

Plaintiff claims that Officers Taylor and Rentals failed to provide requested "medical attention" after Taylor sprayed Plaintiff with mace and after Officer Rentals "assisted." [doc. # 5, p. 3]. When Plaintiff was placed in segregation, he was unable to breathe or see, and his

genitals burned. [doc. # 10, p. 3]. The spray burned his eyes and caused him to hyperventilate and experience shortness of breath. *Id.* at 1. He asked for a nurse, but "there wasn't one there . . . ." *Id.* at 3. He submitted a "sick call slip[,]" but it was never answered. *Id.* He suggests that his symptoms subsided three or six days later. *Id.* at 1, 3.

Construing Plaintiff's allegations liberally and in his favor, he plausibly claims: (1) he had a serious medical need; (2) Taylor and Rentals knew of a substantial risk of serious harm;[13] and (3) Taylor and Rentals were deliberately indifferent by failing to provide (or arrange) medical treatment/decontamination after Taylor sprayed him with mace. The Court should retain this claim against Taylor and Rentals.

**9. Excessive Force**

As above, Rentals and Taylor escorted Plaintiff to the laundry room, where they asked him to remove his clothing and bend over. [doc. #s 5, p. 3; 5-1, p. 2]. After Plaintiff squatted and coughed, Taylor noticed that Plaintiff was looking at him as Plaintiff donned his clothing. [doc. # 5-1, p. 3]. Taylor told Plaintiff that he would spray him with mace if he looked at him again. *Id.* Plaintiff states that "there was nowhere to look." *Id.* Taylor then sprayed him with pepper spray "for looking at him or in his direction while [Plaintiff] was getting dressed." *Id.* The spray burned Plaintiff's eyes and caused him to hyperventilate and experience shortness of breath. [doc. # 10, p. 1]. The spray also contacted his genitals, causing them to burn. *Id.* Plaintiff maintains that he was not a threat to anyone and that he did not make any threatening moves or statements. [doc. # 5-1, p. 3].

---

[13] *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Plaintiff pleads a plausible excessive force claim against Taylor; the Court should retain the claim.

The Court, however, should dismiss Plaintiff's excessive force claim against Rentals[14] because Plaintiff does not plausibly allege that Rentals utilized force against him. Rather, Plaintiff alleges only that Rentals "assisted" Taylor. [doc. #s 5, p. 3; 10, p. 1]. Absent additional details concerning how Rentals assisted Taylor, Plaintiff's claim is implausible and conclusory. *See Carr v. City of Spring Valley Vill.*, 2022 WL 1553539, at *4 (5th Cir. May 17, 2022) ("There are four officers against whom the complaint makes no allegations regarding any use of force . . . . It is axiomatic that an officer who uses no force at all has not used force that is excessive to the needs of the situation.").

**10. Bystander Liability**

To reiterate, Plaintiff claims that Rentals "assisted" Taylor when Taylor sprayed Plaintiff with mace. [doc. #s 5, p. 3; 10, p. 1].

"[A]n officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Timpa v. Dillard*, 20 F.4th 1020, 1038 (5th Cir. 2021), *cert. denied,* 142 S. Ct. 2755 (2022) (quoted source omitted).

Here, Plaintiff does not allege that Rentals had a reasonable opportunity to prevent Taylor from spraying him with mace or that Rentals even knew of Taylor's intention to spray Plaintiff. *See Carr v. City of Spring Valley Vill.*, 2022 WL 1553539, at *4 (5th Cir. May 17, 2022) ("Plaintiffs do not allege reasonable measures these four officers could have taken to stop any

---

[14] [doc. # 10, p. 1].

14

excessive force . . . ."). Plaintiff only conclusorily states that Rentals "assisted Taylor." Consequently, the Court should dismiss this bystander liability claim against Rentals.

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that—with the exception of Plaintiff James Anthony Lyons's excessive force claim against Correctional Officer Taylor and claims of constitutionally inadequate medical care against Correctional Officer Taylor and Correctional Officer Rentals—Plaintiff's claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for habeas corpus relief be **DISMISSED WITHOUT PREJUDICE** to his right to pursue the relief in a separate habeas corpus proceeding after he exhausts all his state remedies.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 23rd day of August, 2022.

15

                                                                       /s/ Kayla Dye McClusky
                                                                       Kayla Dye McClusky
                                                                       United States Magistrate Judge